IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ SEP 17 2009 ★

BROOKLYN OFFICE

CRAIG BASSETT,

    PLAINTIFF

    vs

THE CITY OF NEW YORK, a
municipal entity, NEW YORK
CITY POLICE OFFICER, NEW
YORK CITY POLICE OFFICER
ELLIOTT McGINNIS, Shield #
18457, NEW YORK CITY POLICE
OFFICERS "JOHN DOES", all of
the identified and non identified
persons in their individual and
in their official capacities,

    DEFENDANTS

COMPLAINT [JURY TRIAL]

# 09   4015

MAUSKOPF, J.

CARTER, M.J.

## I.   INTRODUCTION

1.   This is a litigation which arises out of the
Plaintiff's stop, detention and custodial arrest on August
25, 2009 at or about 12:15 P.M. or thereabouts in the
vicinity and proximity of 892 Belmont Avenue, Brooklyn, New
York.

2.   The litigation also arises out of the Plaintiff's
stop, detention, and his custodial arrest and the dismissal
of the charge associated with the Plaintiff's arrest [upon
the Motion of the Kings County District Attorney].

3.   The charges were dismissed by the Criminal Court
of the City of New York, the State of New York, the County
of Kings, on August 28, 2009 upon the motion of the Kings
County District Attorney's Office when the Plaintiff was
produced for his arraignment.

4.   This is an action in which the Plaintiff seeks
relief for the violation of his rights as guaranteed under
the laws and Constitution of the United States and, as

well, under the laws and Constitution of the State of New York.

5.   The Plaintiff seeks monetary damages and such other relief, including injunctive relief and declaratory relief [if appropriate], as may be in the interest of justice and as may be required to assure that the Plaintiff secures full and complete relief and justice for the violation of his rights.

## II. JURISDICTION

6.   Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 and 1367 in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of New York.

7.   The facts which give rise to the State law claims, have a common nucleus with the facts which give rise the federal law claims. The federal and the pendent State law claims arise out of the same transaction.

8.   The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff seeks, in addition to monetary damages, whatever other relief is needed to provide full and complete justice including, if appropriate, declaratory and injunctive relief.

9.   This is an action in which the Plaintiff seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States and, as well, as guaranteed under the laws and Constitution of the State of New York.

## III. THE PARTIES

10.   The Plaintiff is an African American citizen and resident of the State of New York, the City of New York, and the County of Kings.

11.   The Defendant City of New York is a municipal entity which was created under the authority of the laws and Constitution of the State of New York and which is

authorized with, among other powers, the power to maintain
a police department for the purpose of protecting the
welfare of those who reside in the City of New York.

12.   Defendants Elliott McGinnis, Shield # 18457, and
"John Does" are New York City Police Officers and agents
and employees of the City of New York.  Although their
actions and conduct herein described were unlawful and
wrongful and otherwise violative of the Plaintiff's rights
as guaranteed under the laws and Constitution of the United
States and of the State of New York, they were taken in and
during the course of their duties and functions as New York
City Police Officers and as agents and employees of the
City of New York and incidental to the otherwise lawful
performance of their duties and functions as New York City
Police Officers and agents and employees of the City of New
York.

IV. ALLEGATIONS

13.   The Plaintiff is Craig Bassett.

14.   This is a litigation which arises out of the
Plaintiff's stop, detention and custodial arrest on August
25, 2009 at or about 12:15 P.M. or thereabouts in the
vicinity and proximity of 892 Belmont Avenue, Brooklyn, New
York.

15.   The litigation also arises out of the Plaintiff's
stop, detention, and his custodial arrest and the dismissal
of the charge associated with the Plaintiff's arrest [upon
the Motion of the Kings County District Attorney].

16.   The charges were dismissed by the Criminal Court
of the City of New York, the State of New York, the County
of Kings, on August 28, 2009, upon the motion of the Kings
County District Attorney's Office, when the Plaintiff was
produced for his arraignment.

17.   The Plaintiff, who is an African American citizen
and resident of the City of New York, County of Kings,
State of New York, is forty [40] years of age.

18.   The Plaintiff's birth date is October 31, 1968.

19.   The Plaintiff has a common law wife and five
children, ages eight months, four years, five years, seven

years, and nine years of age. The Plaintiff has been with his wife for approximately ten [10] years.

20.   The Plaintiff resides at 892 Belmont Avenue-2nd Floor [2R], Brooklyn, New York 11208.

21.   The Plaintiff has resided at the afore-described address with his common law wife and their five children for the past approximately five years.

22.   At the time of the arrest the Plaintiff was unemployed and had been unemployed for approximately two years or thereabouts.

23.   The Plaintiff serves as the superintendent of the building in which he reside in return for payment of rent. The building consists of two floors with four resident apartments [two on each floor].

24.   The Plaintiff also works as a part time custodian for other buildings which are located in the neighborhood in which he resides with his family.

25.   Prior to the last two years, the Plaintiff was employed for approximately six years or thereabouts by Llewellyn Telephone, located in Northport, Long Island, New York, as a telephone and data installation technician. Before his employment by Llewellyn Telephone, the Plaintiff was employed for approximately four years as a carper cutter for Consolidated Carpet which was, at the time, located on Grand Avenue, Brooklyn, New York.

26.   The Plaintiff was born in Flushing, Queens, New York.

27.   The Plaintiff attended Tilden High School in Brooklyn, New York.

28.   The Plaintiff received a GED.

29.   The incident which gives rise to this incident commenced on August 25, 2009 when the Plaintiff was unlawfully stopped and detained, without any basis for such, and then falsely arrested, without probable cause, at or about 12:15 P.M. in the vicinity and proximity of his residence at 892 Belmont Avenue, Brooklyn, New York, then unjustly held in custody until he appeared for his

arraignment on August 28, 2009 at or about 1:00 P.M. when, at that time and upon the motion of the Kings County District Attorney, the charge, which had been preferred against the Plaintiff ["Attempted Tampering with Physical Evidence"], was dismissed by the Criminal Court of the City of New York, State of New York, County of Kings.

30.   At or about 12:15 P.M. on August 25, 2009, the Plaintiff was leaving his residence when, as he left the residence, he was stopped and detained by a New York City Police Officer.

31.   Prior to leaving his residence, the Plaintiff had been out looking for work and had returned to his residence where he changed his clothes.

32.   The Plaintiff left his residence to go to some locations in the neighborhood where, as a part time custodian, he took out garbage and cut boxes and cardboard associated therewith. As noted previously herein, the Plaintiff also functioned as the superintendent for the building in which he resided with his family.

33.   The Plaintiff was confronted by a New York City Police Officer after the Plaintiff had opened the door to his building and was leaving the vestibule to go down the steps to the sidewalk.

34.   The Officer approached the Plaintiff as he was coming down the steps outside of the residence and indicated to the Plaintiff that he could smell marijuana and that the Plaintiff was smoking marijuana.

35.   The Plaintiff had no idea what the Officer was speaking about.

36.   The Plaintiff expressed those sentiments to the Officer.

37.   The Officer took hold of the Plaintiff and frisked the Plaintiff.

38.   There was another uniform Officer present at the location.

39.   The Plaintiff observed a marked New York City Police Department vehicle.

40. The Plaintiff was handcuffed.

41. Almost immediately after the Plaintiff was frisked and handcuffed, additional New York City Police Department vehicles appeared at the location [both marked and unmarked] and both plain clothes and uniform Officers exited their vehicles.

42. The Plaintiff did not have any marijuana in his possession and the Plaintiff did not discard any marijuana or anything else for that matter.

43. The Plaintiff had not been smoking marijuana.

44. The Plaintiff did have a box cutter in his possession as he was preparing to go to other locations, where he took out garbage, to perform his functions among which included the cutting of boxes. Thus, such was the reason he possessed the box cutter.

45. The Plaintiff was informed that a check was to be done on him after he informed the Officer of his name.

46. After a check was run, the Plaintiff was informed that there was an outstanding warrant.

47. The Plaintiff informed the Officer that such was not true and that such was inaccurate. The Plaintiff informed the Officer that he did not have any outstanding warrant.

48. The Plaintiff was placed in a marked New York City Police Department vehicle and transported to the 75th Precinct on Sutter Avenue, Brooklyn, New York.

49. On the way to the Precinct, the Plaintiff indicated to the Officers in the New York City Police Department vehicle that he felt tightness in his chest and that he was not feeling well.

50. The Officers disregard the Plaintiff's complaint about his medical condition and appeared angry that the Plaintiff was stating such.

51. At the Precinct, the Plaintiff was fingerprinted and photographed and detained in a cell.

52.   At the Precinct, the Plaintiff repeated on several occasions that he was not feeling well and that he was suffering from tightness in his chest.

53.   The Plaintiff's complaints about his medical conditions were disregarded for perhaps two or three hours before, eventually, medical personnel were requested and arrived at the Precinct.

54.   The Plaintiff observed what he believed to be irritation by the Officers at the Precinct when he made known his medical condition.

55.   The Officer at the Precinct endeavored to convince the Plaintiff that he should not go to the hospital; that there was no outstanding warrant [as the Plaintiff had been previously informed there was —over the Plaintiff's objection to such]; and that the Plaintiff would be released.

56.   The Plaintiff, however, persisted in his request for medical treatment as the Plaintiff was not feeling well and the tightness in his chest remained.

57.   The Plaintiff was transported by the medical personnel to Kings County Hospital where he remained for several hours and was treated and then released back into the custody of the New York City Police Department for transport back to the 75th Precinct.

58.   The Plaintiff remained in custody at the 75th Precinct overnight until eventually he was transported to Brooklyn Central Booking.

59.   The Plaintiff remained in custody until approximately 1:00 P.M. on August 28, 2009, approximately seventy two hours after he was stopped, detained, and arrested, when at that time he was brought before a Judge and arraigned.

60.   At the arraignment, the Kings County District Attorney's Office moved to dismiss the case and, upon said Motion, the Criminal Court of the City of New York, State of New York, County of Kings, dismissed the charge which had been preferred against the Plaintiff.

61.  The Plaintiff was told he could leave and the Plaintiff did so.

62.  The Plaintiff committed no criminal offense or other offense whatsoever and no reasonable police officer could have believed that the Plaintiff committed any criminal offense or any other offense under and of the law to justify his, stop, detention, custodial arrest, further detention, the preferral of any charge, including but not limited to "attempted tampering with physical evidence", and his prosecution.

63.  There was no basis for the stop and detention and eventual custodial arrest of the Plaintiff by the New York City Police Officers, each of whom is an agent and employee of the City of New York.

64.  While the actions and conduct of the New York City Police Officers were unlawful they were taken in the course of their duties and functions and incidental to the otherwise lawful performance of those duties and functions as New York City Police Officers and as agents and employees of the City of New York. It is believed that the Plaintiff's arresting Officer is Elliot McGinnis, Shield # 18457, 75th Precinct.

65.  There was no basis for the stop and detention and inquiry and there was no probable cause for the custodial arrest of the Plaintiff or for the preferral of charges against the Plaintiff or for the prosecution of the Plaintiff.

66.  The Plaintiff was unlawfully stopped and detained, since there was absolutely no basis for the initial stop and detention, he was subjected to a false arrest and unlawful custodial detention and imprisonment and he was subjected to malicious prosecution, malicious abuse of criminal process and to excessive, unreasonable and unnecessary force in the form of his handcuffing.

67.  The actions and conduct herein described were propelled by the crime offense enforcement initiatives of the City of New York which is grounded in the philosophy of the "ends justifies the means" including but not limited to racial profiling that propels New York City Police Officers to make unlawful and otherwise unjustified stops and

detentions of individuals simply because of the race of the individual as an African American.

68.   Such crime offense enforcement initiative propels officers to make stops, detentions, and custodial arrests where there is no basis for the initial stop and detention and no probable cause for any arrest and, by such, to generate arrest statistics and to otherwise make examples of individuals in the hope that such would depress crime offenses.

69.   The policy and practices have a disproportionate impact on African Americans who, because of their race, are, often times and for no other reason but the race factor singled out for stops, detentions and arrests and derogatory treatment, based on racial considerations and bias, and discriminatory treatment based on racial factors bias.

70.   The Plaintiff was unlawfully stopped and detained and falsely arrested and subjected to racially discriminatory conduct and subjected to malicious prosecution and the malicious abuse of criminal process and excessive and unreasonable and unnecessary force [in the form of handcuffing] and excessive detention.

71.   The actions, conduct, policies and practices and customs herein described violated the Plaintiff's rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

72.   The actions, conduct, policies and practices, and customs violated the Plaintiff's rights under the laws and Constitution of the State of New York including unlawful stop and detention, false arrest and imprisonment, malicious abuse of criminal process, and malicious prosecution, and assault and battery [in the form of the handcuffing and the physical actions associated with the taking of the Plaintiff into custody], racial discrimination, and excessive detention.

73.   The actions, conduct, policies and practices and customs were negligent and otherwise the proximate cause of the injuries and damages suffered by the Plaintiff.

74.   The Plaintiff suffered injuries and damages including loss of liberty, fear, anxiety, mental distress, emotional anguish, and psychological trauma and physical pain and suffering.

75.   The Plaintiff has not yet placed a monetary value on the damages which he incurred although he believes them to be substantial and to include compensatory and punitive damages.

76.   The Plaintiff has no other adequate remedy of law other than for the institution of this litigation.

V.   CAUSES OF ACTION

A.   FIRST CAUSE OF ACTION

77.   The Plaintiff reiterates Paragraph #'s 1 through 76 and incorporates such by reference herein.

78.   The Plaintiff was unlawfully stopped and detained and falsely arrested and falsely and excessively imprisoned and detained in violation of his rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

79.   The Plaintiff suffered injuries and damages.

B.   SECOND CAUSE OF ACTION

80.   The Plaintiff reiterates Paragraph #'s 1 through 79 and incorporates such by reference herein.

81.   The Plaintiff was unlawfully stopped and detained and falsely arrested and falsely and excessively imprisoned and detained in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

82.   The Plaintiff suffered injuries and damages.

C.   THIRD CAUSE OF ACTION

83.   The Plaintiff reiterates Paragraph #'s 1 through 82 and incorporates such by reference herein.

84.   The Plaintiff was subjected to racially discriminatory treatment in violation of his rights as

guaranteed under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

85.   The Plaintiff suffered injuries and damages.

### D. FOURTH CAUSE OF ACTION

86.   The Plaintiff reiterates Paragraph #'s 1 through 85 and incorporates such by reference herein.

87.   The Plaintiff was subjected to racially discriminatory treatment in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

88.   The Plaintiff suffered injuries and damages.

### E.   FIFTH CAUSE OF ACTION

89.   The Plaintiff reiterates Paragraph #'s 1 through 88 and incorporates such by reference herein.

90.   The policies, practices and customs herein described propelled the actions and conduct herein. Those policies, practices, and customs violated the Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

91.   The Plaintiff suffered injuries and damages.

### F.   SIXTH CAUSE OF ACTION

92.   The Plaintiff reiterates Paragraph #'s 1 through 91 and incorporates such by reference herein.

93.   The actions and conduct and policies, practices and customs herein were negligent and otherwise violative of the Plaintiff's rights under the laws and Constitution of the State of New York.

94.   The Plaintiff suffered injuries and damages.

G.   SEVENTH CAUSE OF ACTION

95.   The Plaintiff reiterates Paragraph #'s 1 through 94 and incorporates such by reference herein.

96.   Pursuant to and under pendent State law and pendent State claim jurisdiction and independent of the federally based claim against the Defendant City of New York, the Defendant City of New York is responsible, under State law claims, for the actions and conduct of its Defendant Officers, as employees and agents of the City of New York, pursuant to the doctrine of respondeat superior.

97.   The Plaintiff suffered injuries and damages.

H.   EIGHTH CAUSE OF ACTION

98.   The Plaintiff reiterates Paragraph #'s 1 through 97 and incorporates such by reference herein.

99.   The Defendant City of New York, if the City represents its Officers, uniformly and as a matter of policy and practice indemnifies its Officers for any award of both punitive damages and compensatory damages.

100.   The named and unnamed individual Defendants are employees and agents of the City of New York and their conduct, as described, was taken in the course of their duties and functions as New York City Police Officers and, in their capacities as such, as agents and employees of the City of New York.

101.   Their actions and conduct, while unlawful and unconstitutional, nonetheless were actions and conduct taken to the otherwise lawful performance of their duties and functions as agents and employees of the City of New York.

102.   The Plaintiff is entitled to recover against the City of New York for the conduct of its named and unnamed Officers under the federal claim jurisdiction pursuant to the doctrine of respondeat superior.

103.   The Plaintiff suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Empanel a jury.

[e] Award attorney's fees and costs.

[f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED: New York, New York
       September 16, 2009

                              Respectfully submitted,

                              /s/ James I. Meyerson
                              JAMES I. MEYERSON [JM 4304]
                              64 Fulton Street @ Suite # 502
                              New York, New York 10013
                              [212] 226-3310
                              [212] 513-1006/FAX
                              jimeyerson@yahoo.com

                              ATTORNEY FOR PLAINTIFF
                              BY:_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

———————————————————————

CRAIG BASSETT,

    PLAINTIFF

    vs

THE CITY OF NEW YORK, a municipal
entity, et al.,

    DEFENDANTS

———————————————————————

PLAINTIFF'S INITIAL
DISCOVERY REQUESTS
[INTERROGATORIES AND
REQUESTS FOR
PRODUCTION OF DOCUMENTS]

Counsel:

    Pursuant to Rules 33 and 34 of the Federal Rules of Civil
Procedure and the Local Rules of this Court, the Plaintiff, by his
counsel James I. Meyerson, 64 Fulton Street @ Suite # 502, New
York, New York 10038 [212] 226-3310/[212] 513-1006/FAX,
jimeyerson@yahoo.com requests that the Defendant parties,
individually and collectively including the Defendant
municipal/governmental entity by and through its designated
agent[s], answer separately and fully in writing under oath within
forty five [45] days of service hereof each of the following
interrogatories; and requests that said Defendant parties,
individually and collectively, produce for inspection and copying
the documents and things specified, again within forty five [45]
days of service herein.

DEFINITIONS AND INSTRUCTIONS

    1.  The uniform definitions and rules of construction for

discovery requests set forth in the appropriate Rule of the Local Rules of this Court are incorporated by reference in these interrogatories and requests for production.

2.   It is not necessary to identify a document in response to those interrogatories if the actual document is produced so long as the document produced is identified in the context of a specific and particular request for production.

3.   Defendants are to produce all responsive documents including drafts and non identical copies, within their possession, custody, or control of their agents.

4.   Each paragraph herein shall be construed independently and not by reference to any other paragraph for the purposes of limitation.

5.   With respect to any responsive document which was formerly in the possession, custody or control of any of the Defendants and has been lost or destroyed, state:

> [a] the type of document;
> [b] the subject matter and contents thereof;
> [c] the author of the document;
> [d] each person to whom the original and copies were sent;
> [e] the date on which the document was prepared and/or transmitted;
> [f] the date on which the document was lost or destroyed, the reasons for such destruction and identify the persons requesting and performing the destruction.

## INTERROGATORIES

1.   Identify the New York City Police Officer[s] who were in any manner or fashion involved and engaged with the Plaintiff in the context of his stop, detention, arrest, arrest processing, transport, preferral of charges, and otherwise, including the Plaintiff's handcuffing, his frisk search at the location where the Plaintiff was stopped, detained, and arrested.

2.   Identify the New York City Police Officer[s] who physically touched the Plaintiff in any manner or fashion.

3.   Identify the New York City Police Officer[s] who physically arrested the Plaintiff.

4.   Identify the Police Officer who received/took/was given the collar for the Plaintiff's arrest.

5.   Identify all New York City Police Officers who were present when the Plaintiff was arrested.

6.   Identify the New York City Police Officer who directed the Plaintiff's arrest.

7.   Identify the New York City Police Officers who can set forth, describe, and articulate the basis on which the Plaintiff was arrested.

8.   Identify any other individual whose identity is known to the Defendants and who was present at the time and location of the Plaintiff's arrest.

9.   Identify the New York City Police Officer[s] who transported the Plaintiff to the New York City Police Department

3

facility for processing [75th Precinct].

10.   Identify the New York City Police Officer[s] who was involved in the decision to process the Plaintiff through the system rather than to issue him a Summons or Desk Appearance Ticket and release him.

11.   Identify the New York City Police Officer who frisked the Plaintiff at the location of the Plaintiff's arrest.

12.   Identify the New York City Police Officer[s] who photographed the Plaintiff.

13.   Identify the New York City Police Officer[s] who fingerprinted the Plaintiff.

14.   Identify the New York City Police Officer who conducted a warrant search at the location of the Plaintiff's arrest; at the 75th Precinct to which he was transported.

15.   Identify the individual who can testify about the process, criteria, and protocols which were in place and which were utilized in making the decision to have the Plaintiff arrested and to have criminal charges preferred against the Plaintiff.

16.   Identify the Officer[s] who handcuffed the Plaintiff.

17.   Identify the Officer[s] who escorted the Plaintiff from the transport vehicle into the 75th Precinct.

18.   Identify the individuals who processed the Plaintiff at the New York City Police Department facility to which he was taken [75th Precinct].

4

19.   Identify the Desk Officer at the Police Department facility, to which the Plaintiff was brought to the Police Department facility for processing, when he was brought into the facility for processing.

20.   Identify any other individual who was arrested at the location or in the vicinity of where the Plaintiff was arrested at or about the time of the Plaintiff's arrest.

21.   Identify any other individual who was transported from the vicinity of the Plaintiff's arrest with the Plaintiff to the 77th Precinct in the New York City Police Department transport van.

22.   Identify the individual who requested emergency medical services to come to the 75th Precinct for purposes of providing health care services to the Plaintiff.

23.   Identify the individual who made the decision to request medical services to come to the Precinct for purposes of providing health care services to the Plaintiff.

24.   Identify the individuals who accompanied the Plaintiff to Kings County Hospital.

25.   Identify the individual who accompanied the Plaintiff from the Kings County Hospital back to the 75th Precinct.

26.   Identify the individual who filled in the property voucher associated with the Plaintiff's arrest.

27.   Identify the individual who filled in any evidence voucher associated with the Plaintiff's arrest.

REQUESTS FOR PRODUCTION

1.   Produce the personnel records for the Defendant Officers
and produce all CCRB documents, all Internal Affairs Unit
documents, and any other documents related to the employment of
the Defendant Officers and maintained by the City of New York or
agencies of and/or within the structure of the City of New York
government including the Civilian Complaint Review Board. Such
records should include but not be limited to, as well, any CCRB
documents [index] which identify "persistent" complaint
individuals if any of the Defendants are in said index/on said
list; the New York City Police Department Central Personnel Index;
and any other personnel or personnel related document irrespective
of whether it is maintained in the personnel office or the
personnel file ["strictly speaking"] including but not limited to
all pre-employment documents].

2.   Produce all memo book entries from and of the Defendant
Officers related to the stop, detention, custodial arrest and
detention of the Plaintiff and the preferral of charges against
the Plaintiff

3.   Produce the desk log at the New York City Police
Department facility [75[th] Precinct/Brooklyn, New York] to which
the Plaintiff was initially and subsequently taken for processing.

4.   Produce all records related to the arrest and the
detention of the Plaintiff and the processing and search[es] of

the Plaintiff.

5.   Produce all communication tapes and transcripts related to the arrest, custody, transport and detention of the Plaintiff.

6.   Produce all Desk Logs at the Police Department facility for the period of time that the Plaintiff was at the Police Department facility for initial processing.

7.   Produce all photographs and fingerprints of the Plaintiff.

8.   Produce the Desk Appearance Investigation form, if any, related to the Plaintiff's arrest and the decision to process him through the system rather than to issue him a Summons or a Desk Appearance Ticket.

9.   Produce the documents related to the arrests and processing of the arrests for all individuals, if any, who were arrested at or about the time that the Plaintiff was arrested in the vicinity where the Plaintiff was arrested and who, with the Plaintiff, were transported to the 75th Precinct, Brooklyn, New York.

10. Produce all property vouchers related to the Plaintiff's arrest.

11.  Produce all evidence vouchers related to the Plaintiff's arrest.

12. Produce the "Desk" book entries from the 75th Precinct for the period of time when the Plaintiff entered the 75th Precinct until he left the 75th Precinct.

7

13.   Produce any and all video tapes and audio recordings related to the Plaintiff's arrest and to Plaintiff's post arrest processing starting on the street/sidewalk where the Plaintiff was first stopped, detained, and arrested through his processing at the 75th Precinct, Brooklyn, New York.

14.   Produce all documents related to the request for emergency medical services to come to the 75th Precinct to provide medical services to the Plaintiff; and all documents related to the transport of the Plaintiff from the 75th Precinct to Kings County Hospital and from Kings County Hospital back to the 75th Precinct and the transport of the Plaintiff from the 75th Precinct to Brooklyn Central Booking.

15.   Produce all documents and data related to the payment of settlements and judgments by the City of New York as to both compensatory damages and punitive damages [where there are such judgments] against a New York City Police Officer when and where the New York City's Attorney Office represented the Officer in a federal civil rights police misconduct litigation for the last fifteen [15] years describing how many such cases the City has represented Officers; how many cases were settled and the City has paid the settlement; how many went to trial and judgment was awarded by a jury over against the Officer and, in the latter respect, how many times the City paid the compensatory judgment and punitive judgment [if awarded] against the Officer[s] and how may times, if at all, it declined to do so.

The Plaintiff, through his counsel, reserves his right to amend and to supplement these Discovery Requests and to utilize whatever other discovery mechanisms are available to him pursuant to and under the Federal Rules of Civil Procedure.

DATED: New York, New York
       September 16, 2009

Respectfully submitted,

/s/ James I. Meyerson
JAMES I. MEYERSON [JM 4304]
64 Fulton Street @ Suite # 502
New York, New York 10038
[212] 226-3310
[212] 513-1006/FAX
jimeyerson@yahoo.com

ATTORNEY FOR PLAINTIFF
BY: _____

9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

_____

CRAIG BASSETT,

     PLAINTIFF

     vs                                  NOTICE OF DEPOSITIONS

THE CITY OF NEW YORK, a municipal
entity, et al.,

     DEFENDANTS

_____

PLEASE TAKE NOTICE that the Plaintiff, by and through his counsel James I. Meyerson, Esq., 64 Fulton Street @ Suite # 502, New York, New York 10038   [212] 226-3310/[212] 513-1006/**FAX,** jimeyerson@yahoo.com, hereby and herein schedules the depositions of the party Defendants.

Said depositions will be taken at the office of Plaintiff's counsel as described and set forth above.  The depositions will be taken on dates and at times agreed to by counsel for the parties.

PLEASE TAKE FURTHER NOTICE that the deponents are required to produce at the time and the place of the depositions, if not prior thereto, all documents which are relevant to the litigation and to the elicited testimonies as the term relevant is defined in the discovery context under the Federal Rules of Civil Procedure and

the case law precedent inter-related thereto.

The purpose of the depositions is to secure discovery-relevant and/or trial-relevant evidence.

YOU ARE INVITED TO ATTEND AND TO EXAMINE.

DATED: New York, New York
        September 16, 2009

Respectfully submitted

/s/James I. Meyerson

JAMES I. MEYERSON [JM 4304]
64 Fulton Street @ Suite # 502
New York, New York 10038
[212] 226-3310
[212] 513-1006/FAX
jimeyerson@yahoo.com

ATTORNEY FOR PLAINTIFF
BY:_____